UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JANET PICHON HIXON and | ) |
| RICHARD HIXON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CAUSE NO. 3:17-CV-6-PPS-MGG |
| v. | ) |
| | ) |
| ROBERT J. MCCALLEN, *individually* | ) |
| *and in his official capacity as Justice of* | ) |
| *the Superior Court of Wabash County,* | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Janet Pichon Hixon and Richard Hixson brought this action, *pro se*, challenging various child custody determinations made by a state court judge. They've sued the judge in both his individual and official capacities. The judge in question, Judge Robert J. McCallen of the Wabash County, Indiana Superior Court, now seeks dismissal of the case. Because I do not have jurisdiction over these claims, Judge McCallen's motion will be granted and the case dismissed for a lack of jurisdiction.

**Background**

For purposes of this motion, I take the facts as alleged in the Complaint as being true. Janet and Richard Hixson brought this action seeking injunctive relief from various orders issued by the Judge McCallen. [DE 1.] Plaintiffs seek to restore child visitation rights between Mrs. Hixson and her two children, Lamoine, age 16, and

1

Lyndzy, age 11. [DE 1 at 2.] They also ask me to enjoin a no-contact order issued against Mr. Hixson, the children's step-father. In the complaint, labeled "Emergency Request for Injunctive Relief," the Hixsons allege breach of their 1st, 4th, 9th, and 14th Amendment rights, violation of their parental rights, and gross misconduct on the part of Judge McCallen. [*Id.* at ¶¶70-75.]

The Hixsons tell me that they are residents of Charlotte, North Carolina; the children currently live in Indiana with their father, Doyle Silvers, who is also Mrs. Hixson's ex-husband. [*Id.* at ¶¶5-6, 10.] Mrs. Hixson and her ex-husband have apparently had a tumultuous relationship. The Indiana state court originally granted Mrs. Hixson full custody of both children on August 7, 2009. [*Id.* at ¶8.] But during Mrs. Hixon's period of full custody, Doyle Silvers filed five child abuse complaints with Child Protective Services of Mecklenburg County, North Carolina. [*Id.* at ¶9.] After each investigation, CPS found no evidence of abuse and determined that the Hixsons' home was a safe environment for the children. [*Id.*]

It is unclear from the complaint, but, at some point, the Wabash Superior Court appointed a guardian ad litem ("GAL") to represent the interests of the children. [*Id.* at ¶10.] Based on the GAL's recommendation, Judge Goff, Judge of the Superior Court of Wabash County, awarded Doyle Silvers, the children's father, temporary custody on September 14, 2014. [*Id.*] The children have lived with their father in Indiana ever since. Mrs. Hixson claims that she has been unjustly denied visitation rights by the GAL and the Department of Child Services ("DCS"), even though they are not named

2

defendants in this suit. [*Id.* at 2.] The Hixsons further allege that Judge Goff issued a no-contact order in December 2014 against Mr. Hixson without holding a hearing. [*Id.* at ¶5.]

The chronology from that point on is a bit convoluted, but I will do my best to summarize it: Judge McCallen was assigned as special judge to Mrs. Hixson's custody case in January 2015. [*Id.* at ¶17.] Mrs. Hixson claims that her son, Lamoine, complained to her of physical and verbal abuse by his father during their Spring 2015 visitation in Indiana. [*Id.* at ¶18.] Although it is unclear exactly what circumstances prompted the order, Judge McCallen ordered the children to be placed in a foster home on April 13, 2015. [*Id.* at ¶20.] At a June 13, 2015 hearing, Judge McCallen ordered restricted, supervised visitation between Mrs. Hixson and her children. [*Id.* at ¶¶26-27.] Although Mrs. Hixson was initially allowed a 30-minute supervised phone call with her children every two weeks, she has not had contact for three months. [*Id.* at ¶33.] The Hixsons claim that these orders are unsubstantiated, violate their due process rights, and "deprive[] Mrs. Hixson and her children the right to companionship." [*Id.* at ¶¶15, 30, 37.]

The Hixsons then attended a permanent custody hearing in front of Judge McCallen on November 17, 2016. [*Id.* at ¶43.] The GAL testified that she had no evidence of violence in the Hixson home but that she "had a feeling that something was not right." [*Id.* at ¶43, 46.] Judge McCallen refused to consider evidence on Mr. Silvers' psychological evaluation that indicated a risk of child abuse and neglect. [*Id.* at ¶56.]

3

Accordingly, Judge McCallen awarded Mr. Silvers permanent custody, which he found to be in the children's best interests. [*Id.* at ¶61.] The Hixsons continue to have restricted contact with the children. The Hixsons brought this suit against Judge McCallen alleging that his decision is not supported by "definite and articulable evidence," thus violating their fundamental rights. [*Id.* ¶59-61, 71.] Plaintiffs also claim that both children have been adversely psychologically affected by the separation from their mother. [*Id.* ¶60.] They ask for relief against Judge McCallen's orders and restoration of immediate contact with their children. Judge McCallen now moves to dismiss this action for lack of jurisdiction. [DE 6.]

## Discussion

Because Plaintiffs are *pro se*, I must construe their complaint liberally and hold it to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the Hixsons remain responsible for proving that the jurisdictional requirements have been met. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). And, of course, I have the obligation to police my own jurisdiction. If it is determined that this Court lacks jurisdiction, I must dismiss the case under Federal Rule of Civil Procedure 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1); *Baker v. Kingsley*, 387 F.3d 649, 656 (7th Cir. 2004).

Due to the nature of this action, both the *Rooker-Feldman* doctrine and the domestic relations exception are independent jurisdictional bars. I will start with *Rooker-Feldman* doctrine. The doctrine derives its name from *Rooker v. Fidelity Trust Co.*,

236 U.S. 413 (1923) and *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). At its basic level, the doctrine bars lower federal courts from having subject-matter jurisdiction over claims that seek review of state court judgments. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Lance v. Dennis*, 546 U.S. 459, 463 (2006). The *Rooker-Feldman* doctrine "prevents lower federal courts from exercising jurisdiction over cases brought by 'state court losers' challenging 'state court judgments rendered before the district court proceedings commenced.'" *Lance*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)).

The *Rooker-Feldman* doctrine applies in two circumstances, both of which are applicable here. The first involves a situation like in *Lance* where a plaintiff loses in state court and then asks a federal court to overturn that decision. The second application is where the federal claims are "inextricably intertwined" with the state court judgment. In this latter situation, the question is essentially whether the state court loser is requesting a federal court to review the state court judgment. *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012); *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002). The doctrine is not concerned with why the state court's decision might be wrong, but with which federal court has the authority to intervene. *Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015). It might be that the state judgment is clearly erroneous or unconstitutional, but I still would not be able to review the plaintiff's claims. *See Holt v. Lake County Bd. Of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005) (holding that plaintiff could not avoid *Rooker-Feldman* by styling the injury arising from the state court judgment as a

5

due process violation). To bring a claim in federal court, a plaintiff must first exhaust her options in the state court appellate system and then appeal to the United States Supreme Court. *Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 818 (7th Cir. 2010).

The Hixsons allege that Judge McCallen's orders and custody decision caused them irreparable harm. [DE 1 at ¶¶79-82.] They are explicitly seeking relief from the state court judgment, but in doing they run headlong into the first application of *Rooker-Feldman*. Furthermore, at the very least, the Hixsons are asking me to review the state court judgment. In other words, their claims here are inextricably intertwined with the state court judgment. Because the Hixsons' injuries arise from a state court decision, *Rooker-Feldman* bars me from hearing these claims. The Hixsons must seek review of Judge McCallen's decisions through the Indiana state court system.

In addition, the domestic relations exception to federal jurisdiction also leaves this Court without jurisdiction to review the Hixsons' claims. Domestic relations matters, such as divorce and child custody, are within the state's traditional sphere of power. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004). The doctrine "precludes federal jurisdiction when a plaintiff seeks 'one or more of the distinctive forms of relief associated with the domestic relations jurisdiction: the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support.'" *Dawaji v. Askar*, 618 F. App'x 858, 860 (7th Cir. 2015) (quoting *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998)). The Supreme Court has long recognized this exception to federal jurisdiction. *Barber v. Barber*, 62 U.S. 582 (1858); *Ankenbrandt v.*

*Richards*, 504 U.S. 689, 694-95 (1992) (reaffirming the exception).

The Hixsons seek injunctive relief against child custody and visitation orders issued by Judge McCallen. What they essentially are asking me to do is to intervene in the custody case. I recognize that there are situations when the domestic relations exception does not apply, such as when one parent files a tort action against the other parent on behalf of the child, *Ankenbrandt*, 504 U.S. at 690, but this case arises out of a custody dispute and falls squarely under the "core" category of domestic relations. Therefore, these issues must be raised in state court. *Id.* at 716. As such, I do not have jurisdiction to hear Plaintiffs' claims.

As a final point, while I may ordinarily grant leave to *pro se* plaintiffs to file an amended complaint to remedy errors that I have identified in their complaint, even if the Hixsons attempted to amend their complaint in this action to bring claims not barred by the two doctrines discussed above, Judge McCallen "is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978); *see also Dawson v. Newman*, 419 F.3d 656, 660 (7th Cir. 2005). Therefore, any amended complaint would be futile and is not allowed. *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009).

## Conclusion

For the aforementioned reasons, Defendant Robert J. McCallen's Motion to Dismiss, DE 6, is **GRANTED** and this action is **DISMISSED WITHOUT PREJUDICE**

and **CLOSED** and the clerk is **DIRECTED** to treat this civil action as terminated.

**SO ORDERED.**

ENTERED: June 14, 2017.

s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**
